## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.      1:23-cv-03254-SKC-MEH

MICHAEL MEEHAN,

      Plaintiff(s),

v.

CITY OF ARVADA, and
BRIAN LAAS,

      Defendants.

---

## BRIAN LAAS'S ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

Defendant, Brian Laas, through the undersigned attorneys, respectfully submits his Answer to Plaintiff's Complaint and Jury Demand and in support thereof states as follows:

### **GENERAL DENIAL**

Notwithstanding any of the responses below to the individual paragraphs of the Complaint, Defendant denies each and every allegation contained in Plaintiff's Complaint not specifically admitted herein.

### **INTRODUCTION**

1.    As to Paragraph 1, Defendant admits that K9 Rudy bit Plaintiff on January 3, 2022. Defendant admits that he released K9 Rudy and that Plaintiff was in the bedroom closet. Defendant admits that it was later determined that K9 Rudy

had bit the area around Plaintiff's neck. Defendant denies all other allegations contained in Paragraph 1.

2.      As to Paragraph 2, Defendant Laas admits that his actions on January 3, 2022, followed Arvada's K9 and Use of Force policies. Defendant denies all other allegations contained in Paragraph 2.

3.      As to Paragraph 3, Defendant admits that as a police officer and K9 handler, he has used K9's within the scope of his work following Arvada's K9 and Use of Force policies. Defendant admits that when he uses a K9 to apprehend a suspect, a use of force review is triggered. Defendant denies all other allegations in Paragraph 3.

4.      Defendant denies the allegations in Paragraph 4.

5.      As to Paragraph 5, Defendant admits that he released K9 Rudy, and that K9 Rudy bit Plaintiff. Defendant denies all other allegations contained in Paragraph 5.

## JURISDICTION AND VENUE

6.      Paragraph 6 is a statement of law under which Plaintiff brings his claims and to which no response is required. To the extent a response is required, the allegations are denied.

7.      As to Paragraph 7, Defendant admits that the Court has subject matter and supplemental jurisdiction. Defendant denies that Plaintiff is entitled to attorney fees and costs.

8.     As to Paragraph 8, Defendant admits that venue is proper in the District of Colorado, that the events occurred in Colorado, and that, at all times relevant to the Complaint, Defendant Laas was domiciled in Colorado. Defendant admits that Arvada is a municipality in Colorado.

## PARTIES

9.     As to Paragraph 9, Defendant admits that Mr. Meehan is the Plaintiff. Defendant does not have enough information to admit or deny the remaining allegations in Paragraph 9, but has no reason to contest that Mr. Meehan was a resident of the State of Colorado.

10.     Defendant admits the allegations in Paragraph 10.

11.     Defendant admits the allegations in Paragraph 11.

## FACTUAL ALLEGATIONS

12.     As to Paragraph 12, Defendant admits that on January 3, 2022, Plaintiff was at his mother and ex-girlfriend's residence in violation of four protection orders. Defendant does not have the personal knowledge or information as to when Plaintiff arrived at the residence in violation of the courts' orders, and therefore denies the allegations as to when he arrived at the residence. Defendant denies all other allegations contained in Paragraph 12.

13.     As to Paragraph 13, Defendant does not have the personal knowledge or information to admit or deny the allegations regarding whether Plaintiff and his mother were drinking or arguing, and therefore denies the allegations. Defendant denies that Plaintiff's mother called the police.

14.     As to Paragraph 14, Defendant does not have the personal knowledge or information to admit or deny the information about what Plaintiff's mother said to Officer Tran. Defendant admits that Officer Tran was on scene prior to Defendant's arrival. Defendant admits that Plaintiff's mother, Shelia Meehan-Driscoll ("Ms. Driscoll"), and ex-girlfriend, Analisa Vickroy ("Ms. Vickroy"), were both present and protected parties on valid protection orders which prohibited Plaintiff from contacting them and being at the address of 10693 W 63rd Drive, No. 106, Arvada, CO. Defendant admits that Defendant was present in violation of these orders and legally had to be removed from the location. Defendant admits that Ms. Driscoll had reported that her son assaulted her the day prior when officers responded, but Plaintiff had fled the residence and was not able to be located by police. Defendant denies all other allegations contained in Paragraph 14.

15.     As to Paragraph 15, Defendant does not have the personal knowledge or information to admit or deny the information as to what Officer Tran saw. Defendant admits that Officer Tran informed Defendant upon arrival at the scene that Plaintiff was in the residence and that Plaintiff had shut and locked the door. Officer Tran conveyed to Defendant that announcements were made commanding Plaintiff to come out with no response. Defendant denies all other allegations in Paragraph 15.

16.     As to Paragraph 16, Defendant does not have the personal knowledge or information to admit or deny the information as to what Officer Tran did on scene. Defendant admits that dispatch aired the protection order violation and that Defendant responded to the scene in response to the dispatch call. Defendant knew

about the valid protection orders from the day prior when he responded to the same residence. Defendant denies all other allegations contained in Paragraph 16.

17.     As to Paragraph 17, Defendant admits that Officer Megan Esslinger, Sargeant Robert Brooks, and Defendant with K9 Rudy arrived on scene. Officer Tran and Officer Zachary Tickel were already on scene when they arrived. Defendant denies all other allegations in Paragraph 17.

18.     As to Paragraph 18, Defendant admits the allegations, however, in doing so does not admit that Defendant released K9 Rudy immediately upon arriving on scene.

19.     As to Paragraph 19, Defendant does not have the personal knowledge or information to admit or deny the information as to what Officer Tickel saw. Defendant admits that Mr. Meehan was known to be in the home. Defendant denies all other allegations contained in Paragraph 19.

20.     As to Paragraph 20, Defendant does not have the personal knowledge or information to admit or deny the allegations and therefore denies the allegations.

21.     As to Paragraph 21, Defendant admits that officers had probable cause to arrest Plaintiff for burglary, obstructing a peace officer, failure to leave property upon request of a peace officer, and four counts of violation of a protection order, including two violations of a protection order that named Ms. Driscoll as the protected party. Defendant admits that all of the above formed the basis of probable cause to arrest Plaintiff. Defendant otherwise denies the allegation in Paragraph 21.

22.     Defendant denies the allegations contained in Paragraph 22.

23.    As to Paragraph 23, Defendant admits that eventually, after many announcements and warnings, including a warning right outside the closet door, K9 Rudy was released and that the K9's release constituted a use of force. Defendant denies that force was used prior to entering the home. Defendant denies all other allegations contained in Paragraph 23.

24.    As to Paragraph 24, Defendant admits that Officer Tran and Sargeant Brooks remained outside of the home. Defendant admits that he, along with Officers Tickel and Esslinger, went inside the home accompanied by K9 Rudy. Defendant denies that upon entering the home he planned to have K9 Rudy bite Plaintiff, and denies all other allegations contained in Paragraph 24.

25.    As to Paragraph 25, Defendant admits that he, Officer Esslinger, and Officer Tickel searched the home and made numerous, loud announcements. Defendant denies all other allegations contained in Paragraph 25.

26.    As to Paragraph 26, Defendant admits that after making announcements from outside of the home, at the back door, and in the kitchen, Defendant, Esslinger, and Tickel searched the first floor of the home while continuing to shout at the top of his lungs, "This is the police department. I have a police-trained dog. Come out now or I'll release the dog. The dog will bite." Defendant also admits that K9 Rudy barked to alert Plaintiff of the dog's presence. Defendant admits that Plaintiff refused to come out. Defendant denies all other allegations contained in Paragraph 26.

27.     As to Paragraph 27, Defendant admits that he, Esslinger, and Tickel proceeded upstairs after clearing the first floor, making numerous announcements. Defendant does not have the personal knowledge or information to admit or deny what Officer Tickel saw, and therefore denies all other allegations in Paragraph 27.

28.     As to Paragraph 28, Defendant admits that he, Esslinger, and Tickel proceeded to clear the second floor, making numerous announcements. Defendant does not have the personal knowledge or information to admit or deny what Officer Tickel saw, and therefore denies all other allegations in Paragraph 28.

29.     As to Paragraph 29, Defendant admits that K9 Rudy began to check the last unsearched bedroom. Defendant does not have the personal knowledge or information to admit or deny what Officer Tickel saw, and therefore denies all other allegations in Paragraph 28.

30.     Defendant admits the allegations in Paragraph 30.

31.     As to Paragraph 31, Defendant admits that after K9 Rudy alerted to human odor in the last room, Defendant made repeated announcements at the top of his lungs giving Plaintiff the opportunity to come out. Defendant also admits that K9 Rudy was barking loudly at this time. Defendant admits that K9 Rudy circled the room and demonstrated that he detected human odor. Defendant denies all the remaining allegations in Paragraph 31.

32.     As to Paragraph 32, Defendant admits that K9 Rudy circled the room and did not locate anyone under the bed. Defendant denies all other allegations in Paragraph 32.

33.     Defendant admits the allegations in Paragraph 33.

34.     As to Paragraph 34, Defendant admits that he cast K9 Rudy back into the room. Defendant denies all other allegations in Paragraph 34.

35.     Defendant admits the allegations in Paragraph 35.

36.     As to Paragraph 36, Defendant admits that he leaned into the room and saw the closet. Defendant denies entering the room and all other allegations in Paragraph 36.

37.     As to Paragraph 37, Defendant admits that he leaned out from his position of cover and used his left hand to push the closet door open.

38.     Defendant denies the allegations in Paragraph 38.

39.     As to Paragraph 39, Defendant admits that after K9 Rudy was again cast into the room he gave a head snap as he came into the hallway indicating he had detected human odor.

40.     Defendant admits the allegations in Paragraph 40.

41.     As to Paragraph 41, Defendant admits that K9 Rudy was cast back into the room and directed toward the closet. Defendant denies all other allegations in Paragraph 41.

42.     Defendant denies the allegations in Paragraph 42.

43.     As to Paragraph 43, Defendant admits that he suspected Plaintiff may be in the closet based on K9 Rudy's alert. Defendant denies all other allegations in Paragraph 43.

44.     Defendant denies the allegations in Paragraph 44.

45. As to Paragraph 45, Defendant admits that K9 Rudy was cast back into the room and directed toward the closet. Defendant denies all other allegations in Paragraph 45.

46. As to Paragraph 46, Defendant admits that after making another announcement outside of the closet door, Plaintiff refused to come out, and then K9 Rudy went into the closet and at some point bit Plaintiff. Defendant denies all other allegations in Paragraph 46.

47. As to Paragraph 47, Defendant admits that K9 Rudy bit Plaintiff at some point while they were in the closet, and they came out of the closet with Rudy engaged. Defendant denies knowing where K9 Rudy had bit Plaintiff at this point and denies all other allegations in Paragraph 47.

48. As to Paragraph 48, Defendant admits that Plaintiff had fallen on his back and was punching and strangling K9 Rudy repeatedly. Defendant denies all other allegations in Paragraph 48.

49. As to Paragraph 49, Defendant admits that he told Plaintiff to stop punching and fighting K9 Rudy and he would out the dog. Defendant admits that he told Plaintiff to stop punching and fighting the dog in order safely approach and remove K9 Rudy. Defendant denies all other allegations in Paragraph 49.

50. As to Paragraph 50, Defendant admits that Plaintiff did not comply with Defendant's commands to stop punching and fighting the dog. Defendant denies all other allegations in Paragraph 50.

51.     As to Paragraph 51, Defendant admits that after he was able to see both Plaintiff's hands and that Plaintiff was unarmed, he outed K9 Rudy. Defendant admits that he asked Plaintiff to stop fighting the dog because he did not want K9 Rudy to bite Plaintiff again. Defendant denies all other allegations contained in Paragraph 51.

52.     As to Paragraph 52, Defendant admits he outed K9 Rudy through commanding Rudy to stop biting and grabbing the dog by the collar. Defendant denies all other allegations contained in Paragraph 52.

53.     Defendant denies the allegations in Paragraph 53.

54.     As to Paragraph 54, Defendant admits that he asked Plaintiff to stop fighting the dog because he did not want K9 Rudy to bite Plaintiff again. Defendant denies all other allegations contained in Paragraph 54.

55.     Defendant denies the allegations in Paragraph 55.

56.     Defendant denies the allegations in Paragraph 56.

57.     As to Paragraph 57, Defendant admits that Officers Tickel and Esslinger were present in the bedroom while K9 Rudy was engaged. Defendant denies all other allegations in Paragraph 57.

58.     As to Paragraph 58, Defendant is without personal knowledge or information as to Officer Tickel's mental state and therefore denies those allegations. Defendant admits that Officer Tickel attempted to handcuff Plaintiff until it was realized that K9 Rudy had bitten Plaintiff's neck. Defendant denies all other allegations in Paragraph 58.

59.     As to Paragraph 59, Defendant is without personal knowledge or information as to Officer Esslinger's mental state and therefore denies those allegations. Defendant denies all other allegations in Paragraph 59.

60.     As to Paragraph 60, Defendant admits he stopped K9 Rudy from biting Plaintiff. Defendant denies all other allegations in Paragraph 60.

61.     As to Paragraph 61, Defendant admits that Officers Tickel and Esslinger moved Plaintiff to a safe location in order to give him medical aid. Defendant denies all other allegations in Paragraph 61.

62.     As to Paragraph 62, Defendant is without personal knowledge or information as to what Officer Esslinger saw and therefore denies those allegations.

63.     As to Paragraph 63, Defendant is without personal knowledge or information as to what Officer Esslinger saw or what Plaintiff felt, and therefore denies those allegations.

64.     As to Paragraph 64, Defendant is without personal knowledge or information as to what Officer Esslinger saw, what Officer Tickel heard, or how Plaintiff felt, and therefore denies those allegations.

65.     As to Paragraph 65, Defendant admits that it is his understanding that Officer Tran took photos and evidence. Defendant denies all other allegations contained in Paragraph 65.

66.     As to Paragraph 66, Defendant is without personal knowledge or information as to what the photo depicts and therefore denies its authenticity and denies all the allegations contained in Paragraph 66.

67.     As to Paragraph 67, Defendant admits that Plaintiff was subject to four court ordered protection orders that prohibited Plaintiff from being at his mother and girlfriend's residence. Defendant denies all other allegations in Paragraph 67.

68.     Defendant denies the allegations in Paragraph 68.

69.     Defendant denies the allegations in Paragraph 69.

70.     Defendant denies the allegations in Paragraph 70.

71.     Defendant denies the allegations in Paragraph 71.

72.     As to Paragraph 72, Defendant admits that Policy 318 at that time did not contain the word "force," but in doing so denies that Policy 318 did not treat the use of a K9 in some situations as a use of force.

73.     Defendant denies the allegations in Paragraph 73.

74.     As to Paragraph 74, Defendant admits that a select portion of Policy 318.2 is quoted. Defendant denies that Paragraph 74 contains entire Policy 318.2 and asserts that Plaintiff failed to include relevant sections of Policy 318.2, the full version of Policy 318, and the reference manual that corresponds with those policy sections.

75.     As to Paragraph 75, Defendant admits that APD policy, practice, and training allows the use of a K9 for officer safety taking into consideration the totality of circumstances at the time.

76.     Defendant denies the allegations in Paragraph 76.

77.     Defendant denies the allegations in Paragraph 77.

78.     Defendant denies the allegations in Paragraph 78.

79.     Defendant denies the allegations in Paragraph 79.

80.     Defendant denies the allegations in Paragraph 80.

81.     Paragraph 81 is Plaintiff's belief about the state of the law to which no response is required. To the extent a response is required, Defendant denies the allegations.

82.     Defendant denies the allegations in Paragraph 82.

83.     As to Paragraph 83, Defendant admits that K9 apprehension that results in the K9 biting a person constitutes a use of force. Defendant denies all other allegations contained in Paragraph 83.

84.     As to Paragraph 84, Defendant admits that a use of force must be objectively reasonable under the totality of the circumstances. Defendant denies all other allegations contained in Paragraph 84.

85.     As to Paragraph 85, Defendant admits that K9 apprehension that results in the K9 biting the suspect constitutes a use of force. Defendant denies all other allegations contained in Paragraph 83 and denies that the footnote contains controlling law in the Tenth Circuit.

86.     Defendant denies the allegations in Paragraph 86.

87.     Defendant denies the allegations in Paragraph 87.

88.     As to Paragraph 88, Defendant admits he has received training on how to use a K9 in various situations. Defendant is without personal knowledge or information as to what Plaintiff concluded when reviewing Arvada's K9 training materials, therefore Defendant denies any allegations pertaining to what was apparent to Plaintiff and denies all other allegations contained in Paragraph 88.

89.     Defendant denies the allegations in Paragraph 89.

90.     Defendant denies the allegations in Paragraph 90.

91.     Defendant denies the allegations in Paragraph 91.

92.     Defendant denies the allegations in Paragraph 92.

93.     As to Paragraph 93, Defendant admits that Use of Force Review 19-13 involved responding to a domestic violence assault where the victim had visible injuries. Defendant Laas admits that after giving the suspect numerous opportunities to come out of the home through loud verbal announcements at the front door and bedroom door, Defendant Laas cast K9 Rudy into the bedroom. Defendant Laas admits that the suspect was lying in the bed, awake. Defendant Laas admits that K9 Rudy stood over the suspect until other officers could arrive. Defendant Laas admits that the suspect then made a sudden movement with his right hand causing K9 Rudy to bite the suspect in the right arm. Defendant denies all other allegations contained in Paragraph 93.

94.     As to Paragraph 94, Defendant admits that Use of Force Review 19-13 found the use of force to be appropriate given the totality of the circumstances. Defendant denies all other allegations in Paragraph 94.

95.     As to Paragraph 95, Defendant admits that Use of Force Review 19-33 involved officers responding to a previously trespassed party near the fence line of the Market Place Apartments. Defendant admits that it was reported that the suspect was armed with what appeared to be handgun. Defendant admits that it appeared that the suspect had set up an encampment on the Market Place

Apartment's property. The suspect ran away from officers, and they did not follow. Upon checking the suspect's name, he was found to have a felony warrant for drugs. Defendant admits that he arrived to try and find the suspect with K9 Rudy. Officers were not able to find the suspect at that time as he jumped over the fence. Later that day, Defendant admits that while on an unrelated call, Defendant saw the suspect. Defendant admits that he commanded the suspect to stop, but the suspect did not comply. Defendant admits that the suspect began to rummage through his backpack and refused to show his hands. Defendant Laas gave multiple loud commands that the suspect should not run, or the dog would be released, and the suspect did not listen to commands. Defendant admits the suspect ran across the creek, K9 Rudy was released, and bit the suspect in the right thigh. Defendant admits that the suspect then tried to drown and punch K9 Rudy causing the suspect and the dog to travel 20-30 yards down the creek. Defendant admits that a tourniquet was required upon pulling the suspect and dog out of the creek. Defendant denies all other allegations contained in Paragraph 95.

96.     As to Paragraph 96, Defendant admits that Use of Force Review 19-33 concluded that based on the suspect's "repeated non-compliance with lawful orders, his flight risk, the safety of officers/citizens and the environment," Defendant Laas's actions were appropriate. Defendant denies all other allegations contained in Paragraph 96.

97.     As to Paragraph 97, Defendant admits that the statement was made by Commander Robert VanderVeen as part of the Use of Force Report 19-33. Defendant denies all other allegations in Paragraph 97.

98.     Defendant denies the allegations in Paragraph 98.

99.     As to Paragraph 99, Defendant admits that Policy 318 was in effect on January 3, 2022. Defendant denies all other allegations in Paragraph 99.

100.    Defendant denies the allegations in Paragraph 100.

101.    As to Paragraph 101, Defendant admits that Use of Force Review 18-28 pertains to an incident in which Arvada police were called upon to assist bondsman in the execution of felony property crime warrants. When the suspects would not come out of the home, Arvada police left the scene. Later, Arvada police were called back out due to claims that the female suspect had come out of the home and claimed that the male suspect held her hostage by gun point. Defendant admits that the female reported to officers that the male suspect inside was armed with a handgun. Defendant admits that a neighbor later reported that someone was in her attic. Defendant admits that given the safety concerns posed by the male suspect being armed and in another person's home, Defendant used K9 Rudy to attempt to apprehend the male suspect. Defendant admits that after giving multiple verbal commands for the male suspect to come out and warning him that he would be bit, Defendant deployed K9 Rudy to apprehend the male suspect and avoid injury to other persons and officers. Defendant denies all other allegations contained in Paragraph 101.

102.    Defendant denies the allegations in Paragraph 102.

103.    As to Paragraph 103, Defendant admits that Use of Force Review 18-43 pertained to an incident where an officer attempted to pull over a suspect who was speeding. Defendant admits that the suspect then eluded the officer, crashed the stolen vehicle into a trailer, and fled on foot. Defendant admits that he used K9 Rudy to apprehend the suspect. Defendant admits that he gave numerous loud verbal announcements that the suspect should come out of hiding from under the trailer and the suspect refused. Defendant admits that K9 Rudy bit the suspect. Defendant denies all other allegations contained in Paragraph 103.

104.    As to Paragraph 104, Defendant admits that Use of Force Review 18-43 determined that the use of force was reasonable under the totality of the circumstances. Defendant denies all other allegations contained in Paragraph 104.

105.    As to Paragraph 105, Defendant admits there are two other K9 officers. Defendant is without personal knowledge or information as to what Plaintiff reviewed and therefore denies such allegations. Defendant denies all other allegations contained in Paragraph 105.

106.    Defendant denies the allegations in Paragraph 106.

107.    Defendant denies the allegations in Paragraph 107.

108.    Defendant denies the allegations in Paragraph 108.

109.    Defendant denies the allegations in Paragraph 109.

110.    As to Paragraph 110, Defendant admits that he was not disciplined or reprimanded, but in doing so does not admit that there was any unconstitutional

conduct that would have warranted such discipline. Defendant denies all other allegations contained in Paragraph 110.

### C.R.S. § 13-17-201(2)

111.    Paragraph 111 is a statement of current case law and therefore does not require a response. To the extent Paragraph 111 requires a response, any allegations that Defendant violated the law are denied.

112.    Paragraph 112 is a statement of law under which Plaintiff brings his claims and to which no response is required. To the extent a response is required, the allegations are denied.

### STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### C.R.S. § 13-21-131; Colo. Const. art. II, sec. 7 – Excessive Force
### Defendant Laas

113.    Defendant incorporates all other paragraphs of this Answer as if fully set forth herein.

114.    Defendant admits the allegations in Paragraph 114.

115.    Defendant admits the allegations in Paragraph 115.

116.    As to Paragraph 116, article II, section 7 of the Colorado Constitution speaks for itself. To the extent any violation of Plaintiff's rights is alleged, Defendant denies such allegations.

117.    Defendant denies the allegations in Paragraph 117.

118.    Defendant denies the allegations in Paragraph 118.

119.    Defendant denies the allegations in Paragraph 119.

120.    Defendant denies the allegations in Paragraph 120.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983; Fourth Amendment Municipal Liability
### Defendant City of Arvada

121.    Defendant incorporates all other paragraphs of this Answer as if fully set forth herein.

122.    As to Paragraph 122, the Fourth Amendment of the United States Constitution speaks for itself. To the extent any violation of Plaintiff's rights is alleged, Defendant denies such allegations.

123.-129. As to the allegations contained in Paragraphs 123. – 129. of the Complaint, such allegations are not alleged against Defendant Laas, therefore, no response is required. To the extent an answer is required, Defendant denies the allegations.

### PRAYER FOR RELIEF

Defendant denies all allegations set forth under the "PRAYER FOR RELIEF" section and "WHEREFORE" paragraphs of Plaintiffs' Complaint, including any subparagraphs thereto, and denies that Plaintiff is entitled to any relief in this matter.

### DEFENSES AND AFFIRMATIVE DEFENSES

1.    Defendant alleges that Plaintiff has failed to state a claim or cause of action against Defendant upon which relief may be granted.

2.    As to Plaintiff's First Claim for Relief, Defendant alleges that the sole proximate cause of the injuries and/or damages alleged were due to the negligence

and/or fault of Plaintiff, or that his negligence and/or fault contributed to the same, by his refusing to cooperate with the reasonable requests of the officers to come out of the home and hiding in a closet. On a comparative basis, the negligence and/or fault of Plaintiff far outweighs that of Defendant, whose negligence and/or fault is specifically denied. Plaintiff assumed the risk of noncompliance with officer commands and by hiding. Comparative fault and assumption of risk must be an available defense to Defendant under article XI, section 1 of the Colorado Constitution and C.R.S. §13-21-131's requirement of municipal indemnity.

3.      Plaintiff failed to mitigate his damages by refusing to cooperate with the reasonable requests of the officers to come out, hiding from the police, and fighting with K9 Rudy.

4.      Plaintiff fails to state claims for which relief can be granted because at all times Defendant Laas's actions were objectively reasonable pursuant to article II, sec. 7 of the Colorado Constitution, C.R.S. § 13-21-131, the Fourth Amendment of the U.S. Constitution, and 42 U.S.C. § 1983.

5.      Pursuant to C.R.S. § 18-1-707(1),(2)(b), Defendant is a peace officer who reasonably used the degree of force that he believed was necessary because nonviolent means would be ineffective in the circumstances created by Plaintiff in effecting an arrest, preventing an escape, and preventing an imminent threat of injury to peace officers or other persons. The degree of force used by Defendant was consistent with the minimization of injury to others.

6.     As to Plaintiff's First Claim for Relief, Defendant alleges that Plaintiff's claims for punitive or exemplary damages, given C.R.S. § 13-21-131's requirement of municipal indemnification, are barred by Colorado Constitution, article XI, section 1. As to Plaintiff Second Claim for Relief, Plaintiff's claim for punitive or exemplary damages is barred or subject to the limitations of C.R.S. § 13-21-102.

7.     As to the Second Claim for Relief, Defendant alleges that Plaintiff's claims for non-economic damages are subject to the limitations of C.R.S. § 13-21-102.5.

8.     Defendant alleges that Plaintiff's claims for damages are subject to reduction based on compensation from a collateral source pursuant to C.R.S. § 13-21-111.6.

9.     As to Plaintiff's Second Claim for Relief, Defendant alleges that Plaintiff's claim is barred as, at all times relevant to Plaintiff's Complaint, Defendant did not violate a clearly established statutory or constitutional right of Plaintiff and, as a consequence, Plaintiff's claims against Defendant are barred by the doctrine of qualified immunity.

10.     As to Plaintiff's Second Claim for Relief, Plaintiff's claims are barred by the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et. seq.*

11.     Defendant alleges that Plaintiff's claims are barred as, at all times relevant to Plaintiff's Complaint, Defendant was performing discretionary functions and was otherwise acting in good faith and without malice and is, therefore, entitled

to common law public official immunity. *See Trimble v. City and Cnty. of Denver*, 697 P.2d 716 (Colo. 1985).

12.     Defendant alleges that Plaintiff's claims are barred as Defendants were privileged to arrest Plaintiff.

13.     Defendant reserves the right to include additional defenses as may be revealed in the discovery process and as permitted by law and the rules of court.

## DEFENDANT DEMANDS A TRIAL BY JURY

WHEREFORE, having answered the allegations in the Plaintiff's Complaint and Jury Demand, Defendant requests dismissal of the claims against him, and requests Defendant be given his costs expended in the defense, expert witness fees, other items allocatable by statute, and such other and further relief as this Court deems just and proper.

DATED this 9th day of February, 2023.


**CITY OF ARVADA**
**OFFICE OF THE CITY**
**ATTORNEY**


*/s/ Kylie T. Justus*
Kylie T. Justus, # 49862
Bradley H. Moloney #40020
Padraic Emerine #49861
8101 Ralston Road
Arvada, Colorado 80002
720-898-7180
Kjustus@arvada.org
pemerine@arvada.org
bmoloney@arvada.org
*Attorneys for Defendant Laas*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February, 2024 I electronically filed the

foregoing **BRIAN LAAS' ANSWER TO PLAINTIFF'S COMPLAINT AND**

**JURY DEMAND** with the Clerk of the Court using the CM/ECF:

Adam Frank
Cameron Bedard
Frank Law Office LLC
1133 N Pennsylvania St.
Denver, CO 80203
Phone: (303) 800-8222
Fax: (303) 800-9122
adam@franklawoffice.com
cameron@franklawoffice.com

*Attorneys for Plaintiff*

_s/      Erika Pierce_____
Litigation Paralegal